**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Anadarko E&P Onshore LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:25−cv−05250 |
| | § | Jury Demanded |
| Maritech Resources, LLC, | § | |
| Tetra Technologies, Inc., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**ANADARKO 'S SUR-REPLY TO MARITECH 'S MOTION TO DISMISS**

Anadarko files this Sur-Reply in opposition to Maritech's Rule 12(b)(6) Motion to Dismiss,

Dkts. 15-16, and in response to Maritech's Reply in Support, Dkt. 26 (the "Reply").[1]

### I.     Anadarko's Complaint Complies with Rule 10(b)

Maritech argues—improperly for the *first time* in its Reply[2]—that Anadarko's Complaint

violates Rule 10(b) because it fails to separate Anadarko's claims that Maritech breached two

separate provisions of a single PSA into different counts. Maritech's Rule 10(b) argument should

be rejected.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed them in Anadarko's Response in Opposition to Maritech's Motion to Dismiss (the "Response") (Dkt. 25) and/or Anadarko's s Complaint (Dkt. 1).

[2] Maritech's Rule 10(b) argument should be denied solely because it was raised for the first time in its Reply. *See Vargas v. Ass'n of Prof'l Flight Attendants*, 2023 WL 11884640, at \*2 n.2 (N.D. Tex. Feb. 22, 2023) (internal citations omitted) ("This Court does not countenance arguments first raised in a reply brief.").

## A.  The Complaint Provides Maritech Adequate Notice

Rule 10(b) only requires separating Anadarko's claims against Maritech into separate counts "[i]f doing so would promote clarity." *See* FED. R. CIV. P. 10(b).[3] This is because the purpose of Rule 10(b) is to ensure that the defendant has "adequate notice of the claims against [it] and the grounds upon which each claim rests." *In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021).

Tellingly, Maritech does not explain how separating Anadarko's breach of contract claims into separate counts would "promote clarity."[4] This is because Maritech clearly understands the Complaint's allegations and breach of contract claims. Paragraphs 33-41 clearly set forth the breach of contract claims against Maritech. Specifically, Paragraphs 36 and 37 clearly state a claim under Section 11.3 of the PSA associated with Maritech's failure to decommission the both SS 290 and SS 291, and Paragraph 38 clearly states a claim under Section 11.4 of the PSA associated with Maritech's failure to indemnify Anadarko in connection with decommissioning both SS 290 and SS 291. Dkt. 1 at ¶¶ 36-38.[5]

---

[3] *See also Erickson v. Hunter*, 932 F. Supp. 1380, 1384 (M.D. Fla. 1996) (finding complaint complied with Rule 10(b) because separation of claims into different counts "would not facilitate a clearer presentation of the allegations."); *Rohlfing v. Cats Paw Rubber Co.*, 99 F. Supp. 886, 893 (N.D. Ill. 1957) (finding "separation of claims" was not needed to "facilitate[] the clear presentation" of the claims).

[4] Maritech's Rule 10(b) argument is further undermined by: (i) its Motion expressly acknowledging that the Complaint asserts multiple claims in connection with Section 11.3 for both SS 290 and SS 291, Dkt. 16 at 1; (ii) the Parties' Rule 26(f) Joint Discovery/Case Management Plan, making clear that Anadarko is asserting multiple breach claims—one related to breach of each Section 11.3 and 11.4 associated with each of SS 290 and SS 291, Dkt. 18 at § 3; and (iii) Paragraphs 26-28 of the Complaint allege Anadarko made an indemnity demand under Section 11.4 related to both SS 290 and SS 291, and Maritech responded to Anadarko's SS 290 indemnity demand. Dkt. 1 at ¶¶ 26-28.

[5] The factual basis for these claims is fully set forth in preceding paragraphs: Paragraphs 18-22 set forth the factual allegations related to Maritech's breach of Section 11.3; Paragraphs 23-32 set forth the factual allegations related to Maritech's breach of Section 11.4; and Paragraphs 26-28 state that Anadarko made an indemnity demand under Section 11.4 related to both SS 290 and SS

**B. Anadarko's Claims Arise from the Same Transaction or Occurrence**

The Complaint also complies with Rule 10(b) because all of the claims against Maritech are founded on the same transaction or occurrence—the PSA. *See* FED. R. CIV. P. 10(b); *see also*, *Marianao Sugar Trading Corp v. Pennsylvania R Co.*, 11 F.R.D. 288, 290 (S.D.N.Y. 1951)(finding complaint violated Rule 10(b) because it did "not affirmatively appear that" the claims "were accepted for transportation under a single contract."); *James Richardson & Sons, Ltd. v. Conners Marine Co.*, 141 F.2d 226, 227–28 (2d Cir. 1944) (same).

**II.     Anadarko's SS 290-Claims Are Based on the PSA—Not Federal Regulations**

Taking a cherry-picked portion of paragraph 37 of the Complaint out of context and omitting key words,[6] Maritech appears to argue that Anadarko pled that Maritech's failure to comply with 30 CFR 250.1725 was a breach of contract. Dkt. 26 at 2. This is simply untrue. The Complaint makes *no* reference to 30 CFR 250.1725 or any other specific regulatory provision. All of Anadarko's claims arise from Maritech's breaches of the PSA. Regardless, however, the Complaint alleges that BSEE extended Maritech's regulatory decommissioning deadline for SS 290 to August 2018, and Anadarko has explicitly pled facts sufficient to invoke the doctrine of *contra non valentum*. Dkt. 1 at ¶¶ 18, 23-24. Because all of Anadarko's factual allegations must be accepted as true, Maritech's Motion must be denied. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

291 and Maritech responded to Anadarko's SS 290 indemnity demand. Dkt. 1 at ¶¶ 18-22, 23-32, 26-28. When taken together with Paragraphs 33-41, there can be no doubt that the Complaint provides Maritech with adequate notice of the claims against it and the grounds upon which each claim rests.

[6] Paragraph 37 of the Complaint provides in full: "By failing to comply with **the Orders, the Leases, Anadarko's demands, and other** applicable regulations requiring decommissioning of the Leases and the plugging of the Transferred Wells, Maritech has materially breached its obligations in Sections 2.1(b) and 11.3 of the PSA. Dkt. 1 at ¶ 37 (emphasis on the omitted words).

Moreover, without citing to any legal authority, Maritech further claims that an Incident of Noncompliance or "INC" is not a means to extend SS 290's regulatory decommissioning deadline. Dkt. 26 at 3. Notwithstanding the *ipse dixit* nature of this statement, this argument raises a question of fact related whether Maritech's SS 290-regulatory decommissioning deadline was extended. Resolution of questions of fact at this pleadings stage, prior to discovery, are premature. *See Cunningham v. Hamilton-Ryker IT Sols., LLC*, 2022 WL 868709, at *2 (S.D. Tex. Feb. 16, 2022), *adopted*, 2022 WL 861512 (S.D. Tex. Mar. 23, 2022).

### III.    The Serial Register Cannot Provide Constructive Notice of a *Possible Injury*

Maritech claims that Anadarko had constructive notice of SS 290's termination via a "serial register page" associated with SS 290 on BOEM's website. Dkt. 26 at 3. In other words, Maritech argues that Anadarko had a burden to continuously search the public records *before* and *after* notice of a possible injury. That is not the law in Louisiana.

As noted in Anadarko's Response, in the context of applying the discovery rule, Louisiana courts have expressly *rejected* the argument that plaintiffs have a burden to continuously search public records *without first* having notice of a possible injury. Dkt. 25 at 9-10. Maritech's own cited authority is consistent with this legal proposition and not its own argument. Dkt. 26 at 3 (citing *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997) ("As a general rule, prescription begins to run 'from the time there is **notice** enough **to call for inquiry about a claim**.'") (emphasis added). Unlike here, in *Terrel*, the plaintiff had notice of possible injury that triggered his duty to search the public records when he was rendered "a quadriplegic as the result of gunshot wound . . . ." 704 So. 2d at 37. The Complaint is devoid of any allegations indicating that Anadarko had notice of a possible injury arising from Maritech's failure to decommission SS 290 prior to BSEE's October 7, 2021 decommissioning order. Dkt. 1 at ¶¶ 23-24. In other words, Anadarko did not

have a burden to search the public records, including the "serial register" for SS 290, until after October 7, 2021.

Maritech fails to identify any notice of a possible injury provided to Anadarko in connection with Maritech's failure to decommission SS 290 that would be sufficient to require Anadarko to search the public records. As alleged in the Complaint, Maritech received an extension of its regulatory decommissioning deadline until August 2018, and Anadarko was first notified of Maritech's failure and of a possible injury on October 7, 2021.

## IV.    CONCLUSION

For the reasons stated above, Anadarko requests that Maritech's Motion be denied in its entirety. Anadarko further requests any other relief, whether legal or equitable, to which it may be entitled.

Dated: April 6, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

/s/ *Melanie Rother*

Melanie Rother
*Attorney-in-charge*
State Bar No. 24041826
Federal ID No. 39164
melanie.rother@nortonrosefulbright.com
William A. Moss
State Bar No. 24078041
Federal ID No. 2522940
william.moss@nortonrosefulbright.com
Madeline Inzenga
State Bar No. 24131407
Federal ID No. 3850898
madeline.inzenga@nortonrosefulbright.com
1550 Lamar St Ste 2000
Houston, TX 77010
Telephone:(713) 651-5151
Facsimile: (713) 651-5246

***Counsel for Plaintiff Anadarko E&P Onshore LLC***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served on all known counsel of record via CM/ECF on April 6, 2026.

*/s/  Melanie Rother*
Melanie Rother
